IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARQUIS MILLER,<br><br>    Plaintiff,<br><br>VS.<br><br>SUZANNE MITCHELL,<br>Magistrate Judge, in her individual<br>Capacity,<br><br>    Defendant, | Case No. 25-CV-535-SWS |

**ORDER DENYING MOTION TO DISQUALIFY PRESIDING
JUDGE SCOTT W. SKAVDAHL**

In his most recent Motion (ECF No. 25) Plaintiff[1] seeks to "Disqualify the Honorable Scott W. Skavdahl pursuant to 28 U.S.C. § 455(a); Order reassignment of this case to a judge whose impartiality cannot reasonably be questioned; and who is outside of the 10th Circuit . . . ." (*Id*. at 16.) This Court will deny the motion as it is untimely, inadequately supported, and irrational.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 455(a) "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be

---

[1] This Court will liberally construe Mr. Miller's pro se filings but does not act as his advocate and his pro se status does not relieve him from complying with the Local Rules and Federal Rules of Civil Procedure. *See Luo v. Wang*, 71 F.4th 1289, 1291 n. 1 (10th Cir. 2023).

Page **1** of **8**

questioned." The intent of § 455(a) is "to promote public confidence in the integrity of the judicial process" and to avoid even the "appearance of impropriety." *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 860 (1988). "[W]hat matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States,* 510 U.S. 540, 548 (1994). Under § 455(a), "a judge has a continuing duty to recuse before, during, or, in some circumstances, after a proceeding, if the judge concludes that sufficient factual grounds exist to cause an objective observer reasonably to question the judge's impartiality." *United States v. Cooley,* 1 F.3d 985, 992 (10th Cir.1993). "The decision to recuse is committed to the sound discretion of the district court." *United States v. Burger,* 964 F.2d 1065, 1070 (10th Cir. 1992) (citation omitted).

"The provisions of 28 U.S.C. § 455(a) do not command automatic disqualification of a judge, to the contrary, it is the duty of the judge who is allegedly biased to pass on the sufficiency of the allegations." *See David v. City & County of Denver,* 837 F.Supp. 1094, 1095 (D. Colo. 1993). A judge has the obligation not to disqualify himself unnecessarily. *See Cooley,* 1 F.3d at 994. A judge is obligated not to recuse when there is no occasion for him to do so, just as he is obligated to recuse when there is occasion to do so. *See Nichols v. Alley,* 71 F.3d 347, 351 (10th Cir. 1995); *Hinman v. Rogers,* 831 F.2d 937, 939 (10th Cir. 1987). In those cases where it is a close call under § 455(a), the court must opt for recusal. *See Nichols,* 71 F.3d at 352.

Under § 455(a), a judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue; rather, the issue is whether a reasonable person, knowing all of the relevant facts, would harbor doubts about the judge's impartiality. *Id.* at 351;

*Cooley*, 1 F.3d at 993. The standard is objective and the inquiry is limited to outward manifestations and reasonable inferences to be drawn therefrom. *See Nichols*, 71 F.3d at 351; *Cooley*, 1 F.3d at 993. "The initial inquiry is whether a reasonable *factual* basis exists for calling the judge's impartiality into question." *Cooley,* 1 F.3d at 993. Section 455(a) requires a focus on whether a judge's impartiality might "reasonably" be questioned. *Id.* However, Section 455(a) is not to be construed to require recusal "upon the merest unsubstantiated suggestion of personal bias or prejudice." *Franks v. Nimmo,* 796 F.2d 1230, 1235 (10th Cir. 1986) (citing *United States v. Hines*, 696 F.2d 722, 729 (10th Cir. 1982)).

Finally, in *Singer v. Wadman*, 745 F.2d 606, 608 (10th Cir. 1984) the Tenth Circuit "held that under either 28 U.S.C. § 144 or § 455, the party seeking recusal must act in a timely fashion to request recusal. *Willner v. University of Kansas,* 848 F.2d 1023, 1028 (10th Cir. 1988), *cert. denied,* 488 U.S. 1031, 109 S. Ct. 840, 102 L.Ed.2d 972 (1989); *Singer v. Wadman,* 745 F.2d 606, 608 (10th Cir. 1984), *cert. denied,* 470 U.S. 1028, 105 S. Ct. 1396, 84 L.Ed.2d 785 (1985)." In *Singer*, plaintiffs' motion to disqualify was filed about a year after the complaint was filed, and after plaintiffs had suffered adverse rulings on various motions. Relying upon *Singer*, in denying a motion to disqualify and finding it untimely, the district court judge in *Encino Gardens Apartments, Inc. v. Smith*, 2017 WL 3575481 (D.N.M. 2017) noted untimeliness where "Defendant necessarily was fully aware of the facts he now relies upon to claim bias, yet he sat on those facts until after I ruled adversely to him." *Id*. at 1.

It with these standards and precedent in mind that the Court evaluates Plaintiff's motion to disqualify.

**FACTUAL BACKGROUND**

Due to Mr. Miller's suit being brought against a judge within the Western District of Oklahoma, this case was assigned to a judge outside of the Western District of Oklahoma, Judge Skavdahl, on May 20, 2025 (ECF No. 5). This same process was followed with Mr. Miller's suit brought against Chief Judge DeGiusti on March 19, 2025 (25-cv-301; ECF No. 6). As noted in the docket entry and order in both cases, that reassignment was done at the direction of the Tenth Circuit.

On June 13, 2025, this Court granted Chief Judge DeGiusti's motion to dismiss Mr. Miller's case against him based upon absolute judicial immunity. (25-cv-301; ECF No. 23.) That case is now on appeal before the Tenth Circuit. On November 24, 2025, this Court entered an order dismissing Mr. Miller's case against Magistrate Judge Mitchell, also based upon absolute judicial immunity. (ECF No. 20.) On December 19, 2025, Mr. Miller filed a Motion to Alter Judgment (ECF No. 22), which is currently pending. On January 12, 2026, Mr. Miller filed his Motion to Disqualify Judge Skavdahl. (ECF No. 25.)

In support of his motion Mr. Miller has attached an article, published in the Spring of 2018, in "Judicature" magazine entitled "JHealth How the Tenth Circuit is Improving the Health and Performance of Federal Judges" (ECF No. 25-1).[2] One of the three authors of that 2018 article was Chief Judge DeGiusti. Chief Judge DeGiusti's "involvement" with

---

[2] See https://judicature.duke.edu/articles/jhealth-how-the-tenth-circuit-is-improving-the-health-and-performance-of-federal-judges/ (last visited on January 20, 2026).

Page **4** of **8**

JHealth has been publicly known since even before the Spring of 2018. Plaintiff has made reference to Chief Judge DeGiusti's involvement with JHealth in prior filings in his various cases.

As explained in the article:

JHealth is a free, voluntary, and informal program with three components: (1) educational resources about judicial health, (2) services from a Consulting Medical Professional (CMP) retained by the Tenth circuit to consult with Judges, their families, and court staff about judges' performance and health issues, and (3) guaranteed confidentiality for voluntary consultations

(ECF No. 25-1 at 4).

While Chief Judge DeGiusti served on the Judicial Health and Assistance Committee and was instrumental in creating the JHealth program, neither he nor any other judges, Circuit or District, provide the services. He is not the "Chair" of JHealth. He sat on a committee that formed it. Those JHealth services are performed by the Consulting Medical Professional ("CMP"), a medical doctor who is under contract with the Tenth Circuit. The treatment and advice given by the JHealth doctor is confidential. (ECF No. 25-1). Absent consent of the judge seeking or being treated by the CMP, what is discussed is not disclosed anyone, including a "Chief" judge. *Id*.

As required by statute, Judge Skavdahl and Chief Judge DeGiusti served as "Chief Judges" for their respective Districts, however nothing about that title or that service is unique or unusual. The designation of a Chief Judge is pursuant to statute, 28 U.S.C. § 136, and provides for no special access to or other information about colleagues. Let alone judges in separate judicial districts, as is the case with Judge Skavdahl and Chief Judge

DeGiusti. Judge Skavdahl completed his term as "Chief" Judge in June of 2025. During their overlap as Chief Judges, Skavdahl and DeGiusti attended chief judge's meetings and judicial conferences, as required and scheduled by the Circuit and Administrative Offices of the United States Courts. Outside of these professional settings, Judges Skavdahl and DeGiusti have not socialized or interacted. They are too busy.

## ANALYSIS

Plaintiff raises a number of "issues" that he believes cause an objective observer reasonably to question judge Skavdahl's impartiality. This Court disagrees.

First, the appointment of Judge Skavdahl to preside over these cases in the Western District of Oklahoma was done at the direction of the Chief Judge of the Tenth Circuit. This was not a matter of Chief Judge DeGiusti or Judge Mitchell's choosing or selecting a judge. Because Mr. Miller has brought suit against an active sitting judge on the bench for the Western District of Oklahoma, to avoid any appearance of prejudice or bias, a judge from outside the Western District of Oklahoma was appointed. Due to Judge Skavdahl already handling a case arising out of the same facts and circumstances it is assumed he was assigned Judge Mitchell's case. That assignment was done prior to any rulings in the case brought against Chief Judge DeGiusti. (ECF No. 5.) The blanket recusal of the Western District of Oklahoma simply is a recognition that a rational person might perceive a conflict and lack of impartiality by the presiding judge who is under the leadership of the Chief Judge who is a named defendant. As a judge presiding in the District of Wyoming, Judge Skavdahl is not subject to any influence or control by Chief Judge DeGiusti or any

other judge on the Western District of Oklahoma bench. Thus, an objective observer would not reasonably question Judge Skavdahl's impartiality, given his complete independence.

The fact that Judge Skavdahl and Chief Judge DeGiusti overlapped in their service as Chief Judges for their respective Districts would not cause an objective observer to reasonably question Judge Skavdahl's impartiality. As detailed above, neither has control or influence over the other. Their role is statutorily created and limited to their respective district. Outside of the meetings and conferences, they do not socialize or confer. Their access to JHealth services is no different from that of any other judge in the Tenth Circuit. Moreover, any communications would be confidential and serving as Chief Judge provides no special access or privilege. Neither is there anything about Chief Judge DeGiusti's service on a Tenth Circuit committee that formed JHealth that would cause a reasonable person to question Judge Skavdahl's impartiality in Mr. Miller's cases against Chief Judge DeGiusti or Magistrate Judge Mitchell. This "institutional" connection is illusory and, when viewed realistically, insignificant; it does not support disqualification. Mr. Miller's affidavit is full of conclusions, beliefs, and opinions which are insufficient to support his motion to disqualify. *See Hinman v. Rogers*, 831 F.2d 937, 938 (10th Cir. 1987) (while the judge may not consider the truth of facts alleged, conclusions, rumors, beliefs, and opinions are not sufficient to support disqualification).

Finally, Plaintiff's Motion to Disqualify is untimely. Despite having knowledge of the facts upon which he basis his motion well before any rulings were made by Judge Skavdahl, Plaintiff only filed his motion to disqualify months after adverse rulings were made in this case. To be timely, a motion seeking disqualification of the presiding judge

must be made at the first opportunity, after discovery of the facts relied upon to support disqualification. *See Willner v. University of Kansas,* 848 F.2d 1023, 1028 (10th Cir.1988), *cert. denied,* 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989); *Singer v. Wadman,* 745 F.2d 606, 608 (10th Cir.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 785 (1985).

## CONCLUSION

Plaintiff's Motion to Disqualify (ECF No. 25) is untimely and unsupported by the facts. Mr. Miller's affidavit lacks any facts supporting an objective determination that Judge Scott W. Skavdahl's impartiality might reasonably be questioned. Thus, for the reasons stated herein:

**IT IS ORDERED** Mr. Miller's Motion to Disqualify Presiding Judge Scott W. Skavdahl (ECF No. 25) is hereby **DENIED**.

Dated this 22nd day of January, 2026.

Scott W. Skavdahl
United States District Judge